UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEREK WAYNE MOORE, on behalf of himself and all other similarly situated, ) ) ) | CASE NO. 4: 12 CV00792 |
| Plaintiff, ) ) ) | JUDGE DONALD C. NUGENT MAGISTRATE JUDGE BAUGHMAN |
| v. ) ) | **MEMORANDUM OPINION AND ORDER** |
| FIRST ADVANTAGE ENTERPRISE SCREENING CORPORATION, ) ) ) ) | |
| and ) ) | |
| FIRST ADVANTAGE BACKGROUND SERVICES CORP., ) ) ) | |
| Defendants. ) | |

This matter is before the Court on the Motion of Defendants First Advantage Enterprise Screening Corporation and First Advantage Background Services Corp. (collectively, "First Advantage") for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 7.1. First Advantage requests summary judgment on Plaintiff Derek Wayne Moore's Second Amended Class Action Complaint. For the reasons stated herein, the Motion (ECF #27) is GRANTED. Plaintiff's individual claims and his putative class claim for violation

of 15 U.S.C. § 1681k are dismissed. Additionally, the Motion to Strike Defendants' Expert Report and to Exclude Documents (ECF #41) is DENIED as moot.

## I. FACTS

On March 30, 2010, Plaintiff applied for and was conditionally extended a position as a truck driver with Nabors Well Services, Ltd. ("Nabors"). Nabors requested that First Advantage prepare a report about Plaintiff's criminal history, driving history, and employment background.

First Advantage searched its databases on March 30, 2010 for potential criminal records regarding Plaintiff. The results of the search revealed three potential records relating to Plaintiff: (i) Case Number 540-92, a misdemeanor conviction in the Angelina County District Court for driving while intoxicated; (ii) Case Number CR-18774, a 1998 conviction in the Angelina County District Court for the felony of hindering apprehension; and (iii) Case Number 07-1994, a 2008 misdemeanor conviction in the Angelina County District Court for possession of marijuana under two ounces.

That day, First Advantage requested that East Tex Records Research review the records at the Angelina County District Court regarding these three potential records. East Tex provided First Advantage with the results of its search, confirming the convictions in Case numbers 540-92 and 07-1994. East Tex also reported to First Advantage the following information about Case Number CR-18774:

> **Cause # CR-18774　　　　Level: 3rd degree Felony**
> Charge: Hindering Apprehension
> 3/22/96 offense date
> 04/24/96 Case filed in 217th District Court
> 06/03/96 disposition, placed on deferred adjudication 5 yrs
> 　　　　Probation 5 yrs. Court costs $126.50, Fine $500,00

> 12/08/98 Order imposing addl terms of probation:
>     30 days county jail
>     Substance Abuse Evaluation
>     Submit to Outpatient Counseling & treatment
> 05/14/01 Order imposing Addl Term of probation: 50 hours community services, Alternative probationary sentence in Jefferson County Tx Restitution Center.
>     Probation extended two years, ending 06/03/03.
> 10/18/01 Motion for consideration to serve an alterate [sic] probationary sentence in a Jefferson County Restitution Center.

On April 1, 2010, in light of the discrepancy between the database search results and the East Tex report, former First Advantage employee Illeana Wynn spoke with personnel from the Angelina County District Court about Case Number CR-18774. An experienced Court clerk incorrectly advised First Advantage that Plaintiff had been convicted in Case Number CR-18774. Wynn wrote:

> District Court: 936-634-5312 sp/w Martha for case # CR-18774 the disposition did change to convicted after the sentence was modified.on 12/08/1998 there was no extra probation given on 10/18/01 there was no jail time given.[1] A restitution center is where the defendant on probation stays and learn in a center with other people and do community service learn different skills and work to pay off their restitution on the case. so it was just a motion for consideration into the program.

First Advantage then issued a report to Nabors, which inaccurately stated that Plaintiff was convicted in Case Number CR-18774 on December 8, 1998.[2] The report noted that the

---

[1] According to testimony, Martha was an experienced clerk who had been with the court for years.

[2] Other consumer reporting agencies have reported that Plaintiff was convicted in Case Number CR-18774. Indeed, Plaintiff repeatedly testified at his deposition that, since 2001, at least five employers terminated Plaintiff after background checks performed by other entities showed that Plaintiff had been convicted in Case Number CR-18774.

original disposition of the case was deferred adjudication.

On April 5, 2012, Nabors wrote to Plaintiff and advised him it was suspending his conditional offer of employment as a result of certain information Nabors had learned. At the time, Nabors' Human Resources Policies & Procedures Manual provided that unacceptable criminal history included "any misdemeanor conviction involving theft, violence, illegal drugs or sexual offences, **not** succeeded by a minimum of Five (5) years of verifiable, stable work history immediately prior to date of application for employment."

Thus, Plaintiff's 2008 conviction for marijuana possession in Case Number 07-1994, not any information about Case Number CR-18774, precluded his employment by Nabors. This was confirmed by Nabors' human resources manager, Bob Barnett, who testified that a felony conviction in 1998 would not preclude employment by Nabors in 2010 because "It's too long. It's too old. The conviction is too far in the past." Plaintiff does not dispute that Nabors instead rescinded Plaintiff's conditional offer of employment because he had been convicted of a misdemeanor for possession of illegal drugs and did not satisfy Nabors' minimum hiring criteria.

Nabors attached a copy of First Advantage's report to the April 5, 2010 letter and informed Plaintiff that First Advantage had generated the report. Nabors also wrote, "[t]o reactivate the conditional offer of employment, Nabors Well Services must receive notification of removal of any incorrect information from the consumer reporting agency, within 14 days from the date of this letter."

Nabors did not receive any additional information and, on April 19, 2010, wrote to Plaintiff that it had rescinded the conditional employment offer. This letter informed Plaintiff a

second time that First Advantage had prepared the report and that Plaintiff had a right to dispute the report with First Advantage.  Plaintiff did not dispute the report at that time.

Approximately 18 months later, on October 17, 2011, Plaintiff's counsel requested a copy of Plaintiff's consumer report.  It was not until almost two years after applying for a position with Nabors, on February 17, 2012, that Plaintiff filed a dispute regarding Case number CR-18774.

First Advantage employee Becky DeWaters called Plaintiff on February 21, 2012 for more information about his dispute and requested a copy of his photo identification.  That same day, First Advantage wrote to Plaintiff acknowledging receipt of his consumer dispute, stating it was reinvestigating his information and asking him to submit a legible copy of his photo identification, as well as new dispute forms, because the ones he sent were out of date.

On March 19, 2012, Ms. DeWaters telephoned the Angelina County, Texas court and learned from courthouse personnel that Plaintiff was not convicted in Case Number CR-18774.  First Advantage therefore removed information regarding Case Number CR-18774 from its database and provided Nabors with an updated report.  First Advantage also wrote to Plaintiff and his counsel on March 19.  In the letter to Plaintiff's counsel, First Advantage acknowledged receipt of Plaintiff's dispute and requested a release in order to provide additional information.  In the letter to Plaintiff, First Advantage stated that it had completed the reinvestigation of his dispute but requested more information before releasing the reinvestigation results.  Plaintiff received both letters.  Yet, First Advantage never received the requested information.  Plaintiff

commenced this action on March 30, 2012.[3]

## II. LEGAL STANDARD

Defendants have moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Plaintiff's claims against them.  Plaintiff has responded, and Defendants have replied.  Thus, the Motion for Summary Judgment is ripe for review.  In ruling on the Motion, the Court views the record in a light most favorable to the non-movant in accordance with Rule 56.

Summary judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed .R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most

---

[3]Plaintiff makes several factual assertions in his opposition papers that lack evidentiary support.  First, Plaintiff contends that First Advantage provides "interim" reports to Nabors that have not "gone through the quality control process yet," including "interim" reports about criminal matters.  However, to the contrary, First Advantage's corporate designee testified that First Advantage did not provide Nabors with a report that contained "interim" results of Plaintiff's criminal history.  Second, contrary to Plaintiff's assertion, First Advantage's third party researcher unequivocally testified that the document she provided to First Advantage did not contain any information about the May, 2004 withdrawal of an October 18, 2001 "Motion to proceed with adjudication of guilt" in Case Number CR-18774.  Third, Plaintiff asserts that he "was unaware that grossly inaccurate information was provided to Nabors until he requested a copy of his consumer file in early 2012."  The evidence shows, however, that Nabors provided Plaintiff with a copy of the report at issue in April, 2010 before it rescinded his conditional offer of employment.  The evidence also shows that Plaintiff's counsel requested a copy of Plaintiff's consumer file in October, 2011 – and that Plaintiff received it a few days later.  The first time that Plaintiff disputed any information about Case Number CR-18774 was only six weeks before he filed his lawsuit.

favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted). Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87. The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III. DISCUSSION

Plaintiff has brought claims under the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681o, 1681k, 1681i, and 1681n.[4] Plaintiff's claims fail, for several reasons. First, Plaintiff has

---

[4] In the First Amended Complaint (ECF # 11), Plaintiff asserted that First Advantage also violated 15 U.S.C. § 1681e(b). This section provides that, "Whenever a consumer

not provided any evidence that he was harmed as the result of inaccurate information furnished by First Advantage, including evidence tending to prove emotional distress. Second, First Advantage maintained "strict procedures" in compliance with FCRA § 1681k, which included an attempt to resolve a discrepancy between information provided by a contracted third party researcher and a database search by speaking directly with the court. Further, Defendant properly reinvestigated Plaintiff's dispute pursuant to 15 U.S.C. § 1681i. The Court's reasoning is set forth below.

### A. Plaintiff Did Not Suffer Injury Caused By First Advantage

Plaintiff alleges that First Advantage is liable for violating FCRA § 1681o. Section 1681o provides that any person who negligently fails to comply with the FCRA shall be liable for "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o. To prevail on claims under this section, Plaintiff must establish (1) actual damages, and (2) a causal relationship between the damage and First Advantage's alleged violations of the FCRA. *Elsady v. Rapid Global Bus. Solutions, Inc.*, No. 09-11649, 2010 WL 742852, at *3 (E.D. Mich. Feb. 26, 2010). The burden of proving causation remains with Plaintiff at all times to prove that the alleged FCRA violation was substantial factor in causing the asserted actual damages. *Garrett v. Trans Union, LLC*, No. 2:04CV00582, 2006 WL 2850499, at *11 n.5 (S.D. Ohio Sept. 29, 2006). Plaintiff has not provided any evidence to make this showing.

Plaintiff concedes in his opposition papers that he did not suffer any actual damages of

---

reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Plaintiff has now withdrawn this claim in the Second Amended Complaint.

lost wages as a result of any action taken by First Advantage. Indeed, the undisputed evidence shows that Nabors did not hire Plaintiff because he had been convicted of a misdemeanor involving illegal drugs less than five years before seeking employment with Nabors. Thus, Nabors' reason for not hiring Plaintiff bears no relation to whether First Advantage inaccurately reported information about Case Number CR-18774.

Plaintiff nonetheless continues to pursue a claim of emotional distress against First Advantage. Plaintiff has failed to present any tangible evidence of his distress, nor has he linked any purported distress to any action taken by First Advantage. For these reasons, his emotional distress claims are untenable.

The best evidence Plaintiff can muster regarding his alleged emotional distress is his own general testimony, and that of his wife, as to "shame, rejection, humiliation and embarrassment of not being able to provide for his family." (P. Opp. (ECF #26), p. 12-13.). This is not enough. A plaintiff "must present concrete evidence of such distress (e.g., medical reports) and his own conclusory allegations are not enough." *Okocha v. HSBC Bank USA, N.A.*, 2010 WL 5122614, at *6-7 (S.D.N.Y. Dec. 14, 2010). *See also* *Bagby v. Experian Information Solutions, Inc.*, 2006 WL 14580, at *4 (7th Cir. Jan. 4, 2006) (stating that claims of emotional damages are easy to manufacture and finding that the plaintiff's allegations that she suffered from stress, tension headaches, and clashes with loved ones to be self-serving and conclusory statements without any evidence that the plaintiff sought medical or psychological treatment).

Indeed, courts have held that if a plaintiff who relies on his own testimony to establish emotional distress damages "must explain the circumstances of his injury in reasonable detail," and may not "rely on conclusory statements" unless the "facts underlying the case are so

inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir.2004) (construing FCRA).  Evidence of emotional distress is insufficient when it consists of a plaintiff's own testimony that he was "embarrassed and humiliated," or that it was "mentally and emotionally distressful when dealing with[] reporting agencies" or that it was "embarrassing to go somewhere" because of others' knowledge of the inaccurate reporting of information.  *Id.*  See also *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir.2001) (construing FCRA; holding that a plaintiff must either provide "corroborating testimony or medical or psychological evidence" to support an award for actual damages for emotional distress).

Plaintiff here has not met the strict standard for proving emotional distress damages in this case.  Plaintiff's only evidence of emotional distress damages is testimonial.  As Plaintiff admitted, he has not sought any medical treatment or counseling for his purported emotional distress.  He has not lost sleep, nor has he given thought to moving out of town to avoid purported looks of disgust or disdain.  In short, Plaintiff has provided no has provided no facts to substantiate his general, vague allegations of emotional distress.  As such, his claim under FCRA § 1681o cannot survive.

Equally as important to the failure of Plaintiff's 1681o claim is that Plaintiff has not met his burden of showing that any action by First Advantage caused his purported emotional distress.  A plaintiff cannot obtain an award of actual damages (including emotional distress damages), without a causal relationship between the violation of the FCRA and the loss of credit or some other harm.  See *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001).

Here, Plaintiff testified that his purported emotional distress resulted from his general inability to find a job instead of anything specific allegedly done by First Advantage.[5] (Moore Dep. Tr. (ECF #17-20), at 94:11-20, 104:19-105:3). Thus, he has not shown the causal relationship necessary to sustain his emotional distress claim.[6/7]

### B. First Advantage Maintained Strict Procedures Pursuant To Section 1681k

Section 1681k of the FCRA requires that a consumer reporting agency which furnishes a report for employment purposes, such as First Advantage, provide a consumer with notice of adverse public records information at the time it issues a report *unless it maintains strict procedures designed to ensure that the information it reports is complete and up to date.* 15 U.S.C. § 1681k. First Advantage maintained strict procedures to ensure the accuracy of the information it reported about Case Number CR-18774, and therefore was not required to provide Plaintiff with notice.[8]

---

[5] Indeed, Plaintiff did not dispute the accuracy of the First Advantage report for almost two years after he received it. This is true even though Nabors attached a copy of the First Advantage report to its April, 2010 letter rescinding Plaintiff's conditional offer of employment. Such a delay belies any claim that First Advantage caused Plaintiff's purported emotional distress.

[6] Plaintiff also testified that he stopped being depressed when he finally got his TWIC® card, an issue wholly unrelated to First Advantage.

[7] Because Plaintiff cannot prove actual damages, he cannot succeed on his 15 U.S.C. § 1681o claims, and cannot recover attorneys' fees under that section. 15 U.S.C. § 1681o(a)(2).

[8] In any event, Plaintiff had actual notice of the information contained in the report. On April 5, 2010, Nabors provided Plaintiff with a copy of the report, notified Plaintiff that First Advantage prepared thee report and provided Plaintiff 14 days to provide additional information before it reached its final decision. A second letter was sent to Plaintiff on

The FCRA does not define "strict procedures." *Poore v. Sterling Testing Sys. Inc.*, 410 F. Supp. 2d 557, 571 (E.D. Ky. 2006).  Federal courts have described "strict procedures" as "heightened standards for procedures used to collect information for employment purposes" that are "necessarily a more stringent standard' than the "reasonable procedures" standard of 15 U.S.C. § 1681e(b).  *Poore*, 410 F. Supp 2d at 572.

Here, the undisputed evidence shows that First Advantage took three separate steps before it reported that Plaintiff was convicted in Case Number CR-18774.  First, First Advantage searched its database for potential records.  Second, First Advantage engaged a third part contractor to confirm the existence of those potential records.  Third, when there was a discrepancy between the information provided by the third party contractor and the results of the database search, First Advantage personnel spoke directly with the court.

Despite First Advantage's strict and extensive procedures for ensuring the maximum possible accuracy of the information if furnished regarding Plaintiff, the court erroneously advised First Advantage that Plaintiff was a convicted felon.  The court's error is insufficient to hold First Advantage liable, because it is axiomatic that the FCRA is not a strict liability statute.  *Nelski v. Trans Union, LLC*, 86 Fed. Appx. 840, 844 (6th Cir. 2004).

Indeed, Plaintiff has failed to present a genuine question as to what additional strict procedures First Advantage could have, or should have employed to help ensure that the information it furnished regarding Case Number CR-18774 was accurate.  Contrary to Plaintiff's allegations, there is no evidence to demonstrate that any amount of effort on First Advantage's part would have led to a different result.  In fact, multiple other consumer reporting

---

April 19, 2010.

agencies have reported that Plaintiff was convicted in Case Number CR-18774 at least five times since 2001.

In his Opposition, Plaintiff argues that, based upon *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409 (4th Cir. 2001), summary judgment is inappropriate on the issue of whether First Advantage maintained strict procedures and therefore was not required to provide notices pursuant to 15 U.S.C. § 1681k. Plaintiff's reliance on *Dalton* is misplaced.

As an initial matter, *Dalton* did not address whether the defendants had followed strict procedures under the FCRA, stating that, "We leave for another day the determination of what constitutes 'strict,' as opposed to 'reasonable procedures.'" 257 F.3d at 417 (citations omitted0.

The facts of *Dalton* also are distinguishable from the facts of this case. As in this case, the *Dalton* defendants telephoned the clerk of the relevant court as part of its investigation of Mr. Dalton's criminal history. Unlike the situation here, however, the *Dalton* defendants relied on the legal opinion that the clerk independently offered, rather that merely asking the clerk of court to simply read information captured in the court record.[9] The information that the clerk in *Dalton* offered was not directly stated on the document. By contrast, there is no evidence that First Advantage did anything other than ask the Angelina County clerk to merely recite what was in the court's files.[10]

---

[9] Plaintiff mistakenly asserts that the third party in *Dalton* "editorialized the information it received from the clerk." (Pl. Opp. (ECF #36) at 8). It appears that Plaintiff's interpretation of *Dalton* is incorrect. It was the clerk, rather than the third party, that editorialized the information in the court record. The third party merely relied on the speculative opinion it heard from the court.

[10] In *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994), the court held that a credit reporting agency is not liable under 15 U.S.C. § 1681e(b) for reporting inaccurate

Plaintiff has offered no authority to support the suggestion that a furnisher of information like First Advantage must pull and personally examine every document within a court's file instead of being able to rely upon the docket or experienced court personnel to accurately describe what is contained in the file.  In fact, it could be argued that experienced court clerks are in a better position to accurately relate what is in a court file that anyone else.  Absent any authority to suggest that First Advantage's reliance on the court clerk under the facts here was not in keeping with "strict procedures", Plaintiff's position is untenable.

As discussed, First Advantage maintained strict and multi-layered procedures designed to ensure that the report it provided to Nabors about Plaintiff was complete, up to date, and as accurate as possible.  Thus, Plaintiff's claim under FCRA § 1681k fails.

### C. First Advantage Complied With 15 U.S.C. § 1681i

Plaintiff contends that First Advantage violated 15 U.S.C. § 1681i because it did not complete the reinvestigation until Monday, March 19, 2012, which was the 31st day after it received the dispute.  Section 1681i provides that, upon receipt of a consumer dispute, a consumer reporting agency must conduct a reasonable reinvestigation of a dispute within 30 days and provide written notice to the consumer within five days after completing the reinvestigation.

Plaintiff's argument is meritless.  The 30th day of First Advantage's investigation fell on a Sunday.  It is common practice that, when a deadline falls on a Saturday, Sunday, or a holiday,

---

information obtained from a court official as a matter of law. *Id.* at 285.  "A contrary rule of law would require credit reporting agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action" and unjustifiably increase the cost of credit reporting – a result the *Henson* court found untenable.  *Id.* at 285-86.

the day after that date becomes the appropriate deadline. *See, e.g.*, Unif. Stat. & Rule Constr. Act. § 7(6) ("if the last day of the period is a Saturday, Sunday, or legal holiday, the period ends on the next day that is not a Saturday, Sunday, or legal holiday.") The comments to this section note that it is based on Federal practice. *See* Fed. R. Civ. P. 6(a)(C); Fed. R. App. P. 26(a)(C). Thus, to find that First Advantage violated Section 1681i would be contrary to standard federal practice. Plaintiff had not provided any authority to suggest that this method of computation of time does not apply to 15 U.S.C. § 1681i.

Moreover, in compliance with Section 1681i, First Advantage notified Plaintiff on March 19, 2012 that it had completed the reinvestigation. In its March 19 letter, First Advantage informed Plaintiff, for the third time within 30 days, that it would provide him with a copy of the results of the reinvestigation after it could confirm his identify. First Advantage also prepared an amended report for Nabors.

Plaintiff cannot demonstrate a genuine issue of material fact as to his Section 1681i claim. First Advantage is entitled to summary judgment on this claim.

### D. First Advantage Did Not Wilfully Violate The FCRA

Plaintiff alleges throughout the Second Amended Complaint that First Advantage is liable for violating FCRA § 1681n. This section provides that any person "who willfully fails to comply" with the FCRA shall be liable for statutory "damages of not less than $100 and not more than $1,000" and "punitive damages as the court may allow." A "willful" violation of the FCRA is either an intentional violation or a violation committed in reckless disregard of the duties imposed under the FCRA. *Garrett v. Experian Info. Solutions, Inc.*, No. 11-12523, 2012 WL 1931324, at *4 (E.D. Mich. May 29, 2012) (quotations omitted). Recklessness is measured

by "an objective standard; action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Garrett*, 2012 WL 1931324, at *4 (quoting *Safeco Ins. Co. Of Am. v. Burr*, 551 U.S. 47, 68 (2007)).

Plaintiff has not presented any evidence that First Advantage at any time acted in reckless disregard of its duties under the FCRA. When preparing its report about Plaintiff for Nabors, First Advantage undertook three steps before issuing its report. First Advantage: (1) searched its database; (2) engaged a third party researcher to confirm the results of the database search with the hard copy documents at the courthouse; and (3) spoke to experienced court personnel when there was a discrepancy. Moreover, when Plaintiff finally disputed the information about Case Number CR-18774 after almost two years, First Advantage promptly conducted a reinvestigation, removed the inaccurate information from its databases, and provided Nabors with an amended report. Simply put, the evidence does not support a finding of willfulness. Indeed, this is confirmed by the fact that numerous other consumer reporting agencies have reported in at least five other instances that Plaintiff was convicted in Case Number CR-18774.

Similarly, there is no evidence that First Advantage acted with reckless disregard when it reinvestigated Plaintiff's consumer dispute. The evidence unequivocally shows that First Advantage reinvestigated and then deleted the information that was the subject of the dispute.

Because Plaintiff cannot establish that First Advantage willfully violated the FCRA, First Advantage is not liable under 15 U.S.C. §1681n.

### E. The Putative Class Claim Is Dismissed

In his Second Amended Complaint, Plaintiff seeks to bring a putative class claim for

violation of 15 U.S.C. § 1681k. When a plaintiff does not have an individual claim – as the Court has found here – he cannot serve as a class representative. *See, e.g., Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994). Because Plaintiff's Second Amended Complaint does not identify any additional putative class representatives, the putative class claim must be dismissed.

## IV. CONCLUSION

For all of the reasons discussed herein above, Defendants' Motion for Summary Judgment (ECF #27) is GRANTED. Plaintiff's individual claims and his putative class claim for violation of 15 U.S.C. § 1681k are dismissed. Additionally, the Motion to Strike Defendants' Expert Report and to Exclude Documents (ECF #41) is DENIED as moot. IT IS SO ORDERED.

            s/Donald C. Nugent
            DONALD C. NUGENT
            UNITED STATES DISTRICT JUDGE

DATED: 4/17/2013